[No. B105801. Second Dist., Div. Two. Sept. 5, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
JULIO C. BUSTAMANTE, Defendant and Appellant.

694

**COUNSEL**

Jeralyn Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, James W. Bilderback and Gustavo Gomez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ITO, J.\*—**

### DUELING PENAL CODE[1] SECTIONS

The California Legislature enacted Penal Code section 113 (misdemeanor section 113), signed by the Governor on September 15, 1994, filed with the Secretary of State on September 16, 1994, and effective on November 30, 1994:[2]

"(a) Any person who manufactures or sells any false government document with the intent to conceal the true citizenship or resident alien status of another person is guilty of a *misdemeanor* and shall be punished by imprisonment in a county jail for one year. Every false government document that

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]All further statutory references are to the Penal Code unless otherwise noted.

[2]Statutes 1993-1994, First Extraordinary Session 1994, chapter 17, section 1; see California Constitution, article IV, section 8, subdivision (c): ". . . and a statute enacted at a special session shall go into effect on the 91st day after adjournment of the special session at which the bill was passed."

is manufactured or sold in violation of this section may be charged and prosecuted as a separate and distinct violation, and consecutive sentences may be imposed for each violation.

"(b) A prosecuting attorney shall have discretion to charge a defendant with a violation of this section or any other law that applies.

"(c) As used in this section, 'government document' means any document issued by the United States government or any state or local government, including, but not limited to, any passport, immigration visa, employment authorization card, birth certificate, driver's license, identification card, or social security card." (Italics added.)

On November 8, 1994, the voters passed Proposition 187, which became effective November 9, 1994. This initiative created a second section 113 (felony section 113):

"Any person who manufactures, distributes or sells false documents to conceal the true citizenship or resident alien status of another person is guilty of a *felony*, and shall be punished by imprisonment in the state prison for five years or by a fine of seventy-five thousand dollars ($75,000)." (Italics added.)

## PROCEDURAL HISTORY

Appellant Julio C. Bustamante (Bustamante) was charged by way of information with two counts: violations of sections 113, "False Government Documents Activity," and 12021, subdivision (a)(1), felon in possession of a firearm. The information as to Penal Code section 113 read as follows: "On or about May 8, 1996, in the County of Los Angeles, the crime of FALSE GOVERNMENT DOCUMENTS ACTIVITY, in violation of PENAL CODE SECTION 113, a *Felony*, was committed by . . . JOSE GARCIA CABRERA[3] . . . , who did willfully and unlawfully manufacture and sell false government documents, to wit: drivers license, social security, immigration and etc. with the intent to conceal the true citizenship and resident alien status of another person." (Italics added.)

Bustamante made a motion pursuant to section 995 to set aside the information, raising the issue of the "dueling 113's" and arguing that only the misdemeanor version should apply. The prosecution countered by arguing that the more recent statute, that enacted by initiative, was properly charged and supported by the evidence presented at the preliminary hearing.

---

[3]Bustamante originally gave his name to be Jose Garcia Cabrera.

The trial court concluded that the more recently enacted statute must prevail and accordingly denied the section 995 motion. Bustamante waived jury trial and was convicted by the court of the felony violation of section 113 and acquitted of the crime of being a felon in possession of a firearm. A special allegation that Bustamante had served a prison sentence within the last five years pursuant to section 667.5, subdivision (b) was also found to be true. Bustamante was sentenced to the state prison for the statutorily provided term of five years, plus an additional one year for the recent prior commitment to the state prison for a similar offense. Bustamante appeals. We affirm.

### FACTUAL BACKGROUND

The facts are largely undisputed. Los Angeles Police Officer Kenneth Belt (Belt) was conducting an investigation into "paper mills," businesses engaged in the creation of counterfeit documents, particularly those relevant to immigration and citizenship matters. This investigation involved the use of undercover police officers who were videotaped by a commercial television news crew. On May 8, 1996, Belt and his fellow officers, along with the television news crew, went to the vicinity of Independence Avenue and Sherman Way in the San Fernando Valley section of the City of Los Angeles. Belt conducted a surveillance of the area for approximately an hour for the purpose of identifying likely document peddlers. Los Angeles Police Officer Joe Esquivel (Esquivel), acting in an undercover capacity, approached codefendant Jose Chavez (Chavez) and another individual identified only as Navarette. Esquivel was equipped with a concealed radio transceiver, allowing Belt to overhear his conversations with suspects in the field. Chavez and Navarette each made distinctive hand signals indicating they had "micas" for sale. "Mica" is a slang term for a United States Immigration and Naturalization Service identification card. Esquivel placed an order for a birth certificate and Social Security card with Chavez for an agreed price of $60. Chavez instructed Esquivel to write down the desired information[4] on a napkin, which was handed to Navarette. Esquivel was further instructed to return in approximately 40 minutes for the finished products and to make payment. Esquivel then left the location.

In the meantime, Belt observed Chavez hand the napkin to Bustamante. Los Angeles Police Officer Victor Martin (Martin), also undercover, followed Bustamante and observed him to enter an apartment house located at 7323 Millwood, whereupon Martin lost sight of Bustamante. Shortly thereafter Martin observed Bustamante and two other persons emerge from the

---

[4]Name desired, the two parents' names and date of birth.

apartment building, enter a vehicle and drive toward Sherman Way. Martin remained at the apartment house.

Belt observed Chavez and Bustamante enter a parking lot at Independence and Sherman Way in a blue Toyota vehicle and park. Chavez took what appeared to be documents out of his pocket and placed them in a nearby trash can. Navarette retrieved the items from the trash can and made contact with Esquivel. Esquivel inspected the birth certificate and Social Security card, and paid Navarette with three marked $20 bills. Esquivel then placed an order for a second Social Security card by giving Navarette a piece of paper with a name. Esquivel then left. Navarette handed this piece of paper to a person identified as codefendant Alberto Nunez (Nunez). Belt then observed Nunez to walk out of the parking lot area.

Back at the Millwood apartment, Martin then observed Bustamante to return in the same vehicle with the same two other persons, and to enter a particular apartment at 7323 Millwood. Martin observed the two other persons leave, with Bustamante remaining inside the apartment. Belt then observed Navarette and Chavez to reenter the parking lot in the same blue Toyota automobile, exit the car and walk to the vicinity of the trash can where Chavez placed an item in that same trash can. Belt then directed the surveilling and support officers to move in and to arrest the "paper mill" participants then present in the parking lot. Esquivel then went to the Millwood apartment and placed Bustamante under arrest. After securing Bustamante's written consent to search the premises, officers located evidence suggesting a "paper mill" operation: a typewriter, paper cutter, lamination device, forged birth certificates, motor vehicle ownership certificates and work authorization permits. The piece of paper with the name Esquivel requested for the second Social Security card was also found in the apartment. An edited videotape of many of these activities was played for the trial court.

## CONTENTIONS ON APPEAL

Bustamante contends the trial court erred when it determined that the second, initiative-based, section 113 automatically took precedence over the statute passed by the Legislature, and that the two section 113's were intended to coexist. Bustamante urges this court to set aside the sentence imposed and return the matter to the trial court so that the superior court can examine the record and exercise its discretion whether to apply the misdemeanor rather than the felony version of section 113. We decline the invitation. We hold that the provisions of misdemeanor section 113 are inconsistent with those of felony section 113, and are not amenable to any reasonable harmonization that is in keeping with the intent of the voters. We further hold that under recognized principles of statutory construction the later enactment of felony section 113 operates as a repeal, albeit by implication, of misdemeanor section 113.

## STATUTORY INTERPRETATION

 It is helpful at this point to examine the applicable principles of statutory interpretation.[5] ██ "For purposes of statutory construction, the various pertinent sections of all the codes must be read together and harmonized if possible." (*Channell* v. *Superior Court* (1964) 226 Cal.App.2d 246, 252 [38 Cal.Rptr. 13]; *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]; *Cannon* v. *American Hydrocarbon Corp.* (1970) 4 Cal.App.3d 639, 648 [84 Cal.Rptr. 575].) However, as stated in *Sacramento Newspaper Guild* v. *Sacramento County Bd. of Suprs.* (1968) 263 Cal.App.2d 41, 54-55 [69 Cal.Rptr. 480]: "When a later statute supersedes or substantially modifies an earlier law but *without expressly referring to it,* the earlier law is repealed or partially repealed by implication. The courts assume that in enacting a statute the Legislature was aware of existing, related laws and intended to maintain a consistent body of statutes. [Citations.] Thus there is a presumption against repeals by implication; they will occur only where the two acts are so inconsistent that there is no possibility of concurrent operation, or where the later provision gives undebatable evidence of an intent to supersede the earlier; the courts are bound to maintain the integrity of both statutes if they may stand together. [Citations.]" (Italics added.)

### Can Misdemeanor Section 113 Be Harmonized With Felony Section 113?

 Bustamante contends the "dueling 113's" can be harmonized, essentially creating an alternative misdemeanor/felony or "wobbler." Bustamante notes Proposition 187 added two new statutes, sections 113 and 114, which make the manufacture, distribution, sale and use of *all* false documents to demonstrate legal presence a felony criminal offense. Misdemeanor section 113 is a less inclusive offense, applying only to the manufacture or sale of a false *government* document with the intent to conceal the true citizenship or resident alien status of another person.

The Attorney General contends it is impossible to harmonize these statutes and that the later-enacted felony section 113 must prevail. Felony section 113 sanctions the manufacture, sale *and* distribution of *any* false document, not just government documents, while imposing a significantly higher penalty, five years in state prison, or a $75,000 fine. Felony section

---

[5]The rules of statutory construction are the same whether applied to the California Constitution or a statutory provision (*Winchester* v. *Mabury* (1898) 122 Cal. 522, 527 [55 P. 393]), and "[t]he same rules of interpretation should apply to initiative measures enacted as statutes." (*Sanders* v. *Pacific Gas & Elec. Co.* (1975) 53 Cal.App.3d 661, 672 [126 Cal.Rptr. 415].)

113 does not contain a clearly delineated requirement of any specific intent,[6] making the crime's elements significantly different from misdemeanor section 113 which requires ". . . the intent to conceal the true citizenship or resident alien status of another person." (misdemeanor section 113.) The Attorney General notes that companion section 114 created by Proposition 187 makes it a felony to *use* false documents to conceal evidence of true citizenship or resident alien status, indicating an intent to implement a more comprehensive plan to deal with this aspect of the impact of illegal immigration.

The main problem with trying to harmonize the "dueling 113's" is that felony section 113 covers all the conduct covered in misdemeanor section 113, and more. The reach of felony section 113 is broader in the conduct it prohibits, and the sentencing impact much, much more severe. One cannot commit a violation of misdemeanor section 113 without also running afoul of the broader felony statute. This inconsistency makes concurrent operation of these two statutes impossible.

### Intent of the Drafters

Bustamante argues: "Logic dictates that the members of the [L]egislature were aware of the provisions of Proposition 187 at the time they were drafting [m]isdemeanor section 113. Few persons in the state were not." Examination of the legislative history of misdemeanor section 113 and Proposition 187 could logically lead to a contrary conclusion. Our "dueling 113's" appear to have been born from separate yet parallel universes. The legislative history of misdemeanor section 113 does not include mention of Proposition 187 or the felony section 113. The voter's pamphlet presentation of Proposition 187 does not contain mention of Senate Bill No. 29X, 1994 First Extraordinary Session, or misdemeanor section 113. There appears to be no factual basis in the record from which one might conclude that the Legislature or the authors of Proposition 187 were conscious or aware of the other's efforts.

The Attorney General argues the tougher and more comprehensive provisions included in Proposition 187 indicate the voters' intent to supersede the lesser provisions of misdemeanor section 113. This position, however, finds no factual support in the voters pamphlet, which contains no reference to misdemeanor section 113.

---

[6]The language of felony section 113 is somewhat ambiguous: "Any person who manufactures, distributes or sells false documents *to conceal* the true citizenship or resident alien status of another person is guilty of a felony, . . ." (Italics added.) Query whether the required purpose "to conceal" is a poorly worded *specific intent requirement. The cautious trial court might be well advised to treat this as a specific intent crime.*

The ballot pamphlet description of Proposition 187 states: "**New Crimes for Making or Using False Documents** [¶] The initiative *creates two new state felonies*[7] for manufacture or use of false documents to conceal true immigration or citizenship status. The penalties for these crimes would be prison terms of five years or fines of up to $75,000 (for manufacturing) or up to $25,000 (for use). The manufacture or use of false immigration or citizenship documents currently are federal crimes. Forgery of state documents, such as driver's licenses, or obtaining them by fraud is currently a state crime." (Ballot Pamp., Gen. Elec. (Nov. 8, 1994), p. 52, italics added.) This language does, however, support the conclusion that it was the clear intent of the authors of Proposition 187 to create two new state felonies, which points towards the precedence of felony section 113.

### *The Subsequent Statute Must Prevail*

■ Where two laws on the same subject, passed at different times, are inconsistent with each other, the later act prevails. (*County of Ventura v. Barry* (1927) 202 Cal. 550, 556 [262 P. 1081]; *People v. Dobbins* (1887) 73 Cal. 257, 259 [14 P. 860]; see also Gov. Code, § 9605.)

■ Having determined misdemeanor section 113 inconsistent and incompatible with felony section 113, we hold the later-enacted statute, felony section 113, repeals misdemeanor section 113.

### DISPOSITION

The judgment and sentence imposed by the trial court are affirmed.

Fukuto, Acting P. J., and Zebrowski, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 17, 1997.

---

[7]Companion section 114 reads as follows: "Any person who uses false documents to conceal his or her true citizenship or resident alien status is guilty of a felony, and shall be punished by imprisonment in the state prison for five years or by a fine of twenty-five thousand dollars ($25,000)."